UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| STEPHENS MEDIA LLC,  Plaintiff, | Case No. 2:09-cv-02285-MMD-RJJ |
|---|---|
| v. | AMENDED ORDER |
| CITIHEALTH, LLC,  Defendant. | (Plf.'s Motion for Default Judgment – dkt. no. 17) |

**I.   SUMMARY**

Before the Court is Plaintiff Stephens Media LLC's Motion for Default Judgment. (Dkt. no. 17.) Defendant CitiHealth, LLC has not responded. This Order amends the Court's August 6, 2012, Order disposing of this Motion in order to correct an incorrect citation located therein.

**II.   BACKGROUND**

Plaintiff Stephens Media LLC ("Stephens") publishes the *Las Vegas Review-Journal* newspaper. Since 1982, it has conducted a readers poll in print (and more recently, online) entitled, "Best of Las Vegas," where it solicits its readers' preferences on local living in over 200 categories. It has registered four trademarks relating to its "Best of Las Vegas" mark, and alleges a "long-standing, extensively-advertised" use of these marks in the Las Vegas area.

In December 2008, Defendant CitiHealth published and distributed the January 2009 edition of its periodical *Healthy Living* featuring the words "Best of Las Vegas" on its cover with an appearance Stephens alleges was similar to that of Stephens' marks. CitiHealth also reproduced the edition, with the allegedly similar mark, on its website.

On December 2, 2009, Stephens initiated this suit against CitiHealth, alleging (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (3) mark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (4) common law mark infringement; (5) mark dilution under NRS § 600.435; (6) common law misappropriation of licensable commercial property; and (7) unjust enrichment.

After CitiHealth failed to respond to the Complaint, the Clerk of the Court entered default in favor of Stephens on March 24, 2010. (Dkt. no. 8.) After over a year of inactivity, Magistrate Judge Robert J. Johnston issued an Order to Show Cause on May 24, 2012, as to why the case should not be dismissed for failure to prosecute. (Dkt. no. 12.) Six days later, Stephens filed a Motion to Substitute Attorney (dkt. no. 13), and on May 31, 2012, explained to the Court that it had retained new counsel and intended to seek a preliminary injunction and default judgment (dkt. no. 15). Thereafter, on July 2, 2012, it filed this Motion for Default Judgment. On July 13, 2012, Kenneth Shepherd, the co-owner of CitiHealth, notified Plaintiff's counsel and the Court that CitiHealth had dissolved on May 9, 2012, and both he and the other CitiHealth co-owner John Anderson had filed for personal bankruptcy. (Dkt. no. 19.) In the letter, Shepherd represented to Plaintiff's counsel that *Healthy Living* no longer exists and has not existed for the past 3 years.

### III.   LEGAL STANDARD

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the Court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th

Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

"The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Trustees of Elec. Workers Health and Welfare Trust v. Campbell*, No. 07-724, 2009 WL 3255169 (D. Nev. Oct. 7, 2009).

## IV. DISCUSSION

### A. Prejudice

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Stephens served CitiHealth with the Summons and Complaint on December 2, 2009. (Dkt. no. 21.) Since that time, CitiHealth has not responded or answered the complaint, except for an email from its officer notifying Stephens' counsel of its May 2012 dissolution. Under Nevada law, a limited liability company's dissolution shall not abate any action involving that company before final judgment is entered. *See* NRS § 86.505 ("The dissolution of a limited-liability company does not impair any remedy or cause of action available to or against it or its managers or members arising before its dissolution and commenced within 2 years after the date of the dissolution."). Thus, despite its dissolution, CitiHealth's failure to appear in this action and the likelihood that it will never respond to this action creates a high possibility of prejudice to Plaintiff in

the absence of a default judgment. Thus, this *Eitel* factor weighs in favor of entering default judgment.

### B.   Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

Stephens' Complaint states plausible claims for relief under Rule 8, and Stephens provided evidence of the trademark registrations in question to support its Lanham Act and common law trademark claims. To establish a Lanham Act trademark infringement claim, Stephens is required to show that CitiHealth used Stephens' registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." *See* 15 U.S.C. § 1114(1)(a). Assuming, as the Court must, that CitiHealth's mark was similar to that of Stephens (*see* dkt. no. 1 at ¶ 16), Stephens sufficiently alleged a trademark infringement claim against CitiHealth which has merits on its face.

Similarly, Stephens sufficiently alleges a false designation of origin claim under the Lanham Act. Section 1125(a)(1)(A) requires that a plaintiff demonstrate that the defendant used a mark in a "false or misleading" fashion that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person" to the plaintiff's mark. Here, CitiHealth's use of a similar mark to those which Stephens registered was likely to cause confusion as to the proprietor of the authoritative "Best of Las Vegas" list, confusion that is actionable as a false designation of origin.

Stephens is also entitled to default judgment on its mark dilution claims under 15 U.S.C. § 1125(c) and NRS § 600.435. "Whereas trademark law targets interference with the source signaling function of trademarks, dilution protects owners from an appropriation of or free riding on the substantial investment that they have made in their

marks." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (internal quotations and citation omitted). Section 1125(c) protects "the owner of a famous mark . . . against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." NRS § 600.435(1) allows "the owner of a mark that is famous in [Nevada to] bring an action to enjoin commercial use of the mark by a person if such use (a) [b]egins after the mark has become famous; and (b) [c]auses dilution of the mark." Here, Stephens satisfies its burden of alleging substantial investment, over time, in the good will of its "Best of Las Vegas" mark. Its allegation that CitiHealth's similar use of the mark in a magazine suffices to state a plausible claim of trademark dilution under federal and state law.

Lastly, Stephens adequately pleads its misappropriation and unjust enrichment claims against CitiHealth. Stephens alleges that it had licensed its trademarks before, and the failure of CitiHealth to secure such a license unjustly enriched CitiHealth and misappropriated funds that should have legitimately belonged to Stephens.

### C.    Sum of Money at Stake

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Stephens seeks default judgment in the amount of $200,000 as permitted by 15 U.S.C. § 1117(c)(1) for non-willful trademark infringement of one mark. Because Stephens demonstrates a basis for its requested monetary relief, the fourth *Eitel* factor favors Stephens.

### D.    Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, given the sufficiency of the Complaint, "no genuine dispute of material facts would prejudice granting [Plaintiff's] motion." *See id.*

///

### E.     Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. The evidence shows that Stephens served CitiHealth with the Summons and Complaint on or about December 2, 2009, pursuant to Fed. R. Civ. P. 4. (Dkt. no. 7 at 3, ¶ 2.). Although CitiHealth dissolved after the filing of this lawsuit, Nevada corporate law does not excuse dissolved business entities from defending actions pending against them. *See* NRS § 78.585. Indeed, at least one of CitiHealth's officers had sufficient notice of the suit to file with the Court a letter notifying the Court and Stephens of CitiHealth's dissolution and the pending bankruptcy filings of both owners. Therefore, it is unlikely that CitiHealth's failure to respond and subsequent default resulted from excusable neglect.

### F.     Decision on the Merits

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, CitiHealth's failure to answer Stephens' Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against CitiHealth.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Stephens Media LLC's Motion for Default Judgment is GRANTED. The Clerk of the Court shall enter judgment against Defendant CitiHealth in the amount of $200,000 plus accrued interest from the date of the judgment until paid.

IT IS FURTHER ORDERED that Defendant and Defendant's officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under CitiHealth, are hereby enjoined from:

///

A. Directly or indirectly infringing the "Best of Las Vegas" marks (Trademark Registration Numbers 2,410,131; 2,519,098; 2,572,556; 2,410,129; and 2,410,130; collectively "the Stephens Marks") by marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, or causing the marketing, offering, selling, disposing, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, developing, manufacturing, or linking of any goods or services derived from or bearing the Stephens Marks, or to order, direct, participate in, or assist in any such activity; and

B. Using in any manner the Stephens Marks and any term or terms likely to cause confusion therewith, including, without limitation, "Best of Las Vegas" and any variant thereof, in connection with the retrieval of data or information on CitiHealth's other goods or services, or in connection with the advertising or promotion of CitiHealth's goods, services, or websites, or ordering, directing, participating in, or assisting in any such use; and

C. Engaging in any further unlawful and/or wrongful acts as alleged by Plaintiff herein, including mark infringement, false designation of origin, or mark dilution as set forth in the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and any mark infringement, mark dilution, misappropriation, and unjust enrichment in violation of Nevada law.

IT IS FURTHER ORDERED that Plaintiff shall have thirty (30) days from the entry of judgment to file a motion for attorneys' fees that complies with Local Rule 54-16.

IT IS SO ORDERED.

DATED THIS 3rd day of October 2012.

_____
UNITED STATES DISTRICT JUDGE